# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. KIRSTEN KNUDSEN, D.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) No. 05 C 5924 |
| | ) |
| CHRIS BAKER and VIKKI BAKER, | ) Judge Ruben Castillo |
| | ) |
| Plaintiffs-Intervenors | ) |
| v. | ) |
| | ) |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Dr. Kirsten Knudsen and Chris and Vikki Baker ("Plaintiffs") sued Liberty Mutual Insurance Company ("Liberty") in March 2000 on behalf of themselves and a class of similarly situated persons, alleging that Liberty improperly used medical cost and utilization databases to reduce amounts paid for claims to reimburse its customers for medical expenses incurred under its insurance policies. On September 29, 2005, Cook County Circuit Court Judge Julia Nowicki certified Plaintiffs' amended class definition, and Liberty filed its second notice of removal to federal court. At issue is Plaintiffs' motion to remand the case to state court.

I.  **Background**

On March 30, 2005, Liberty filed its first notice of removal from the Circuit Court of Cook County on the grounds that the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"), permitted removal of the class action to federal court. On April 19, 2005, this Court ruled that the case was improperly removed to federal court and remanded the case to state court.

*See* Order of April 19, 2005. Liberty petitioned for leave to appeal the remand. The Seventh Circuit denied Liberty's petition. *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

Liberty filed another notice of removal to federal court on October 14, 2005 (R. 1), after the state court entered an order on September 29, 2005, certifying the following plaintiff class:

> All insureds of Liberty Insurance Company, its affiliates and subsidiaries (collectively "Liberty"), their third party beneficiaries and their assignees who (1) submitted medical bills covered by a Liberty insurance policy, (2) whose claims were adjusted by Liberty, and (3) whose claims were paid in an amount less than the medical charge, based upon the application of a medical cost and utilization database.

(R. 22, Motion to Remand, Ex. A, Sept. 29 Order at 2.) On October 18, Liberty filed a Corrected Notice of Removal (R. 12), in which Liberty contends that removal is now proper under the Class Action Fairness Act because: (1) the September 29 order adds new claims that do not relate back to the filing of the original complaint in March 2000; and (2) some of the new claims are completely preempted under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs filed the instant motion to remand.[1]

## II. Class Action Fairness Act

The Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists. CAFA applies only to suits commenced on or after the date of its enactment, February 18, 2005. *Knudsen*, 411 F.3d at 806. In Liberty's first attempt at removal, Liberty argued that Plaintiffs' proposed

---

[1] Contrary to Plaintiffs' arguments, Liberty's removal was timely. Although the amended class definition was first proposed on July 7, 2005, it was not certified until September 29, 2005, and Liberty removed two weeks later, on October 14, 2005. *See Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998) (Time for removal of case began when state court judge granted plaintiff's motion to amend complaint to add federal claims, not when plaintiff made motion to amend).

change of the class definition from "all Liberty insureds" to "All Liberty Insurance Company and Liberty Fire Insurance Company insureds," commenced a new action under CAFA. *Id.* at 806-07. In denying Liberty's petition for leave to appeal, the Seventh Circuit held that a new action was not commenced by the proposed change in class definition. *Id.* While the Seventh Circuit left open the possibility that "a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes," the Seventh Circuit held that "[t]his possibility does Liberty no good, however, because the change in class definition does not present a novel claim for relief or add a new party." *Id.* at 807.

Since *Knudsen*, the Seventh Circuit has considered three other cases where the defendant argued that a change in class definition was sufficiently distinct so as to constitute the commencement of a new action.[2] The Seventh Circuit denied the petition for leave to appeal the district court's remand order in each case and emphasized the unlikelihood that the amendment to a class definition could ever constitute the commencement of a new action under CAFA. In *Schorsch v. Hewlett-Packard*, although the Seventh Circuit stated that it "can imagine amendments [to the class definition] that kick off wholly distinct claims," the Court of Appeals reiterated that "creative lawyering will not be allowed to smudge the line drawn by the 2005 Act. . . . Amendments to class definitions do not commence new suits." 417 F.3d 748, 751 (7th Cir. 2005). Likewise, in *Schillinger v. Union Pacific R. Co.*, the Seventh Circuit repeated that "the expansion of a proposed class <u>does not</u> change the parties to the litigation nor does it add new claims." 425 F.3d 330, 334

---

[2]*See Pfizer, Inc., v. Lott*, 417 F.3d 725 (7th Cir. 2005); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005); *Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330 (7th Cir. 2005).

3

(7th Cir. 2005) (emphasis added).

Nevertheless, Liberty claims that the instant case is the "possibility" that the Seventh Circuit "can imagine." In other words, Liberty argues that the state court certification of Plaintiffs' amended class definition from all insureds of Liberty Insurance Company to all insureds of Liberty, its affiliates and subsidiaries, commenced a new action. The test for whether an expanded class definition commences a new action for CAFA removal purposes is whether the new claim "relates back" to the original claim. A claim relates back when it arises out of the same transaction or occurrence as the claim in the original complaint.[3] *Schorsch*, 417 F.3d at 751. An amendment relates back in Illinois "when the original complaint furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted . . ." *Id.* (citations omitted).

Liberty alleges that the new class definition contains wholly distinct claims because it: (1) involves additional policies; (2) creates different theories of liability; (3) reaches back farther in time; and (4) arises under federal law. Each of Liberty's arguments fail. First, while the expanded class definition does involve additional and different policies, "the potential for a larger amount of legal research and discovery in and of itself is not a significant enough step to create new litigation." *Schillinger*, 425 F.3d at 334. In *Schillinger*, the plaintiffs wanted to expand the class from Illinois land owners who allegedly had been harmed by Union Pacific Railroad Company's ("UPRR") use of rights-of-way on their land to property owners nationwide who owned land over which UPRR had a right-of-way. *Id.* at 333. Despite the creation of a nationwide class of plaintiffs, the Seventh Circuit held that this change did not create new litigation. *Id.* at 334. In the instant case, the

---

[3]Although Illinois law supplies the rule of decision in this case, the Illinois and federal rules for relation back are "functionally identical." *Schorsch*, 417 F.3d at 751.

4

expansion in research and discovery for Liberty under the new class definition is narrower than in *Schillinger* and involves entities related to Liberty. Thus, the new class definition does not commence a new action by expanding the sheer number of policies at issue.

Second, Liberty argues that the addition of its "affiliates and subsidiaries" created new legal theories of liability based on the claim that Liberty is an "alter-ego" of the affiliates and subsidiaries. However, Illinois state courts and the Seventh Circuit agree that new legal theories, in particular those adding vicarious liability theories of liability, do not create new claims. *See Knudsen*, 411 F.3d at 806 ("a plaintiff may assert an entirely novel legal theory in midsuit without creating a 'new' claim in the sense that the defendant could block it by asserting that it had been propounded after the period of limitations expired"); *Marek v. O.B. Gyne Specialists II, S.C.*, 319 Ill. App. 3d 690, 699, 746 N.E.2d 1, 9 (1st Dist. 2001) (claim related back because party could not claim surprise or prejudice where amended pleading contained allegations identical to those made against party's agent, employee and shareholder in original complaint); *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 1046, 658 N.E.2d 1239, 1246 (4th Dist. 1995) (finding that the addition of vicarious liability counts that were similar to direct liability counts in the original complaint related back, and "the fact that there is a change in [legal] theory is not significant" by itself). Liberty's reliance on *Kennedy v. King*, 252 Ill. App. 3d 52, 56, 623 N.E.2d 955, 958 (4th Dist. 1993), is misplaced. While Liberty alleges a new <u>claim</u> commenced a new action in the instant case, in *Kennedy*, the state court held that a subsequent <u>action</u> for agency or negligent entrustment did not relate back to an original <u>action</u> for negligence against the automobile owner. *Id.* Thus, new legal theories, if any, do not provide a basis for removal to federal court.

Third, Liberty argues that the class certification order created new claims because the order

5

reaches farther back in time. Although the original class definition did not specify a time frame, Liberty did not begin using medical cost and utilization databases to adjust claims for medical benefits under the policies Liberty wrote until 1994. The amendment to the class definition, however, allegedly added two Liberty affiliates or subsidiaries – Liberty Life and Employers of Wausau – that began using medical cost and utilization databases to adjust claims for reimbursement of medical bills under group-health policies in the mid-1980's.

The alleged change in time-frame, like the increase in the number of policies at issue, does nothing more than increase "the potential for a larger amount of legal research and discovery." *Schillinger*, 425 F.3d at 334. In *Schillinger*, the Seventh Circuit reasoned that expanding the plaintiff class from state-wide to nation-wide did not commence a new action because the suit still involved "the same claim alleged in the original complaint" and plaintiffs similarly situated to the Schillingers. *Id.* That same reasoning applies in this case. The class certification order does not change Plaintiffs' original claim: that "claims were paid in an amount less than the medical charge, based upon the application of a medical cost and utilization database." In addition, the plaintiffs, regardless of how far back in time their medical claims reach, all share this ultimate claim.

The Illinois cases to which Liberty cites do not change this analysis. In *Flynn v. Szwed*, the plaintiff's original complaint contained specific allegations of medical negligence occurring in 1980, and the plaintiff attempted to add other, distinct claims of negligence that occurred in 1978 and 1979. 224 Ill. App. 3d 107, 115, 586 N.E.2d 539, 544 (1st Dist. 1991). The state court held that these discrete acts did not constitute a continuous, regular course of treatment, and thus did not relate back. Similarly, in *Strickland v. Commc'ns & Cable of Chi., Inc.*, the plaintiff attempted to amend the original complaint to include a distinct claim of negligence. The plaintiff, who had been assaulted

by an employee of the defendant, originally alleged that the defendant was negligent for not adequately investigating its employee's background before hiring him. 304 Ill. App. 3d 679, 687, 710 N.E.2d 55, 61 (1st Dist. 1999). The state court held that the plaintiff could not amend her complaint to add claims that the defendant approved and ratified the assault, because this was a separate claim of negligence that occurred after the assault. *Id.* at 685, 60.[4] In contrast, in the instant case, as in *Schillinger*, the expanded class involves the same allegations of use of the medical cost and utilization database to pay plaintiffs less than the medical charge, and thus relates back to the original complaint.

### III. ERISA

Liberty next contends that its case must be removed because the expanded class definition adds ERISA claims. Liberty argues that the addition of ERISA claims both commences a new action under CAFA, and provides grounds for removal to federal court under the complete preemption doctrine. The ERISA claims allegedly arise from two of Liberty's affiliates, Liberty Fire and Employers of Wausau, who issued group health policies as part of employee-benefit plans and used medical cost and utilization databases to reduce payments under those policies. Liberty claims that the expanded plaintiff class includes insureds under these plans, who will seek to recover benefits due to them under the terms of the plans.

The class certification order, however, neither adds ERISA claims nor presents a basis for

---

[4]Liberty also mistakenly relies on *Senterfitt v. SunTrust Mortgage, Inc.*, 385 F. Supp. 2d 1377 (S.D. Ga. 2005). In declining to find relation back when the plaintiff class was expanded from a four to twenty-year period, the Georgia district court specifically declined to follow the Seventh Circuit precedent in *Schorsch*: "I decline to follow *Schorsch* because it is not binding precedent and the Seventh Circuit's treatment of relation back in the context of increasing the size of a class action appears to differ from the Eleventh Circuit's approach." *Id.* at 1379 n.3.

complete preemption. The civil enforcement provision of ERISA, Section 502(a), allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 502(a) completely preempts state law causes of action that fall within the scope of that provision. *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir. 2000) (quoting ERISA, § 502(a)(1)(B)). Considered in a vacuum, Section 502(a) appears to be implicated in the expanded class definition of "all insureds" of Liberty, its affiliates and subsidiaries. However, as Liberty bases its arguments for removal on the state court's class certification order, Liberty cannot look to the class definition while ignoring the state court's clear intent in the certification order. The class certification order must be read in its entirety, together with the class definition, to determine if removal is proper. The first paragraph of the state court's certification order and opinion shows that ERISA claims are not covered by the new class definition:

> This case involves a class action suit brought in connection with payments made by Liberty Insurance Company ('Liberty') pursuant to workers compensation and automobile policies allegedly issued by Liberty. Liberty's property and casualty policies obligate it to pay for all reasonable expenses for medical treatment related to covered occurrences.

(R. 22, Mot. to Remand, Ex. A, Sept. 29 Order at 1.)[5] Thus, in the first paragraph of her order and opinion, Judge Nowicki explained that the new class would only include insureds of "workers compensation and automobile policies," or "property and casualty policies." *Id.* Although the class definition says "all insureds," not excepting those insured under group health policies, neither

---

[5]Liberty is correct that Plaintiffs cannot now stipulate to a limitation on the class; however, as the class was never broadened as Liberty alleges, such a stipulation would be redundant. *See Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (a post-removal stipulation or amendment limiting the plaintiff's claim does not authorize a remand).

8

Liberty, Plaintiffs, nor the state court ever contemplated ERISA claims. This is not an attempt at "artful pleading" by Plaintiffs to avoid a federal claim; rather, it is a creative attempt by Liberty to find another way into federal court. *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000). While a claim to ERISA benefits necessarily arises under federal law, there is no claim to ERISA benefits here. *Id.* ("[C]ourts look at substance, see the importance of federal law to recovery, and permit removal"). Indeed, a "mere simulacrum of a possible unasserted ERISA claim [is] insufficient to form a basis for federal jurisdiction." *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971, 975 (9th Cir. 1993).

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand is GRANTED, and this case is remanded to state court based on lack of federal jurisdiction, in accordance with 28 U.S.C. § 1447(c). Section 28 U.S.C. § 1447(c) makes an award of attorneys' fees "the norm" for improper removal. *Schorch*, 417 F.3d at 751. In view of the history of the case, the Court will adhere to the norm and hereby awards reasonable attorneys' fees to Plaintiffs.

ENTERED: /s/ Ruben Castillo
**Judge Ruben Castillo**
**United States District Court**

Dated: December 13, 2005